Good morning everyone and welcome to the Ninth Circuit. Judge Nelson and I are happy to welcome Judge Oliver from the Northern District of Ohio who has come out here to this rainy weather to help us, so thank you. We'll take the cases in the order on the day sheet. We have several cases that were submitted on the briefs. Ann Wongari-Mwakiro v. William Barr is submitted. Next we have Satvir Singh v. William Barr is submitted. Next we have Marina Calixtro-Loya v. William Barr, which is submitted. And our first case for argument is Verl Brantner v. Ocwen Loan Servicing LLC. Counsel? Good morning, Your Honors. May it please the Court. Heather Wright from Nashville, Tennessee, also Sixth Circuit, here on behalf of the Appellant Defendant, Ocwen Loan Servicing. I would like to reserve three minutes of my time for rebuttal and understand I'll be monitoring the clock, so thank you. As a matter of law, Ocwen did not have a legal duty to the estate to insure the property for the benefit of the estate, to file an insurance claim for the benefit of the estate, or to maximize insurance recovery from the insurer for the benefit of the estate. Yet in this case, the district court allowed those arguments to be presented to the jury on whether or not Ocwen violated the Consumer Loan Act and the Consumer Protection Act by breaching those alleged duties. And as a result, the district court committed reversible error. First, the district court incorrectly denied Ocwen's motion for summary judgment on the Consumer Loan Act and Consumer Protection Act claims. At summary judgment, Ocwen argued that it had no legal or contractual duty to file an insurance claim, to process a claim, or contest valuation of the claim. Indeed, counsel for the estate argued in his opening statement Let me ask you. Yes, Your Honor. You're not appealing from the denial of summary judgment, are you? Yes, Your Honor, we are appealing from the denial of summary judgment. The Ninth Circuit has held that in following Supreme Court precedent where the denial of summary judgment was based solely on an erroneous legal decision that this court can review the denial of that summary judgment. So it was unclear from your briefs which orders you were reviewing. So there were some orders on some rulings on summary judgment. Couldn't tell whether you were also arguing that the district court had erred in denying your motion in limine and there were also jury instructions. So perhaps you can make clear, as you've just done with this ruling about legal duty, which order of the district court you're appealing. And my question about your legal duty argument is that I'm assuming the opposing side is arguing that there was a violation of RCW 31.04291E, but that doesn't expressly indicate that there has to be a legal duty. So why or what is the basis for saying that the lack of a legal duty would be an error under that provision? Your Honor, Subsection C specifically provides that the Consumer Loan Act requires a mortgage servicer to promptly correct any errors and refund any fees associated to the borrower resulting from the servicer's error. Our argument would be that with no legal duty to file an insurance claim for the benefit of the estate, try to maximize coverage for the benefit of the estate, with no legal duty to do that, there can't be an error in failing to do that. Is there any support for that argument? Because I didn't see any case being cited that would say you can't have an error without a legal duty. I think in common understanding, if the insurance proceeds are available and the lender just misses that and doesn't bother to collect them, that that would be at least a mistake. That seems a pretty reasonable conclusion. So what is the basis? Is there any case or is there any statutory framework that would say there has to be a legal duty? Your Honor, there is not a case that specifically says that under the Subsection E, the error has to be associated with a legal duty. However, I would take issue with the conclusion that a lender has an obligation to obtain insurance proceeds for the benefit of the estate. This was an insurance policy that was not procured by the borrower for the borrower's interest in the property. It was procured by the lender to protect the lender's financial interest in the property. And as a result of that, as a matter of under the language of the deed of trust and under the insurance policy itself, there is no duty on behalf of the servicer. There is no legal duty, but the lender normally will get the insurance to protect the value of the secured property. And if you just forget to collect the proceeds or you delay, unreasonably delay it, I think a jury could reasonably conclude that there was a mistake that was made, which is why the district court denied, I assume, a summary judgment. And I'm just trying to understand why that was an error of law. The reason that it's an error of law, Your Honor, is because the loan servicer's obligation with respect to insuring the property is for the benefit of the investors that the loan servicer is working on behalf of. It is not for the benefit of the borrower, number one. Number two, the property insurance itself only insures the improvement on the property. It doesn't insure the raw land. So to assume that the insurance proceeds would result in paying off the loan, that's not the manner in which the property insurance works and the way it works on the loan. In fact, isn't that what the lender did? I mean, unreasonably, they applied the insurance proceeds to the loan? Your Honor, the deed of trust in this case specifically gives the lender the option to decide whether the proceeds will be used to repair. Or to rebuild the property, right? To repair and rebuild the property or to pay down the loan. And which does it decide to do here? In this case, it decided after the estate decided that they wanted the proceeds applied to the loan, they applied the proceeds to the loan. Okay. But it seemed to take a long time to get to that point. Your Honor, it did take a long time to get to that point. And the facts that were presented in the case below, there is some confusion about whether the estate was going to be paying the difference to pay off the loan. As a matter of application of the proceeds, if the proceeds had been applied to the loan immediately upon receipt, then they would have reinstated the loan, but then there still would have been payments due on the loan. But they would have been much smaller, right? The payments would not be smaller, Your Honor. Right, but the amount due would be smaller. What would have been the difference? Excuse me, Your Honor, I'm sorry. What would have been the difference? Because how much were they getting back from insurance proceeds? At the time of the loss, the unpaid balance was almost $160,000. The insurance proceeds ended up being about $132,000 when you reduced the replacement cost value down to actual cost value under the policy. So there would have been an unpaid principal balance of about $30,000. Okay. And so if the proceeds had been applied in August of 15, then the loan would have been brought current as of September of 15, and the estate could have continued to make payments on the loan. The loan itself, those payments would not get any smaller. That's set forth in the deed of trust. It would have just paid it off. The amortization would have been shorter. Yes, Your Honor. So can I ask a more fundamental question here? The jury verdict, help me understand the special jury verdict form. It came back and said that Occoquan engaged in unfair, deceptive act or practice, right? Yes, Your Honor. And it also said separately that it violated the CLA. Yes, Your Honor. So if it violated the CLA, most of your arguments go to the legal duties under the CLA, right? Yes, Your Honor. Are you making an argument that the jury's first special verdict finding is unsupportable by evidence and just couldn't have been made, that Occoquan engaged in an unfair, deceptive act or practice? Two things, Your Honor. First, number one, under Washington law, the Supreme Court has been clear that whether or not an undisputed act, which we have here, is unfair or deceptive is a question of law that has to be decided by the court. It's not a question that should be decided by a jury. In this case, if you strip away the errors that we say were committed with respect to the lack of a legal duty and you only look at, to Your Honor's point, the question of whether or not the proceeds should have been applied at a prior point in time, then that leaves you with whether or not the issue of applying the proceeds is an unfair, deceptive act. And that is not an issue that the jury could decide without the court separately deciding that. Did you make that argument in your summary judgment motion? We argued at summary judgment and also in motions in limine that there was an issue for the court to decide about whether or not conduct was unfair and deceptive. So if we go back to the five elements of the unfair practices or to prevail on a CPA claim, you're arguing that the jury didn't have any information or couldn't actually decide that your client had engaged in unfair or deceptive acts or practices. You're saying that that always has to be a question of law? When there are undisputed facts, which there were in this case, whether an act is unfair or deceptive is an issue for the court to decide. The cases that the Ninth Circuit has addressed, has discussed in this issue, are involved, for example, the collection notices and whether or not the language of collection notices, and this is in Penong v. Farmers Insurance of Washington, 166 Washington 2nd, 27. The court specifically talked about whether the language of the notices were unfair and deceptive. There was no dispute about whether the notices were sent or whether they'd been received. So let's say we have to decide that. It strikes me by, for whatever reason, dragging this out for two and a half years is effectively what happened. How could you say that a jury couldn't decide or a jury couldn't decide that there was something unfair or deceptive about that? Your Honor, I'm sorry, Your Honor. No, I'm sorry. I didn't mean to cut off the judge, but after that, I have a question. When you strip away the lack of duty, I acknowledge and Aquamon would acknowledge that there could be an issue for the jury with respect to the time period that it took to apply the proceeds. The problem is that that's not the only issue that was presented to the jury. The jury was also presented with the loan servicer should have filed a claim for the estate. The loan proceeds should have been enough to pay off the loan. The loan proceeds should have, the loan servicer should have fought harder to get more proceeds for the estate. Those are all issues that the loan servicer doesn't have a legal duty to do. We would acknowledge that the loan servicer, when the proceeds were received, there is an issue, could be an issue for a jury about what should have been done at that time. That's not the case that was tried. The remedy for that is to reverse and remand with instructions that the CLA claims as a matter of law are precluded because there's no legal duty to support those claims, and then there can be a trial solely on the application of the proceeds issue. Let me comment. Yes, Your Honor. So if we don't buy your argument that there's no legal duty, that's just hypothetically. Understood. Then you still stick with the notion that as it relates to this notion of undisputed facts, that there were no disputed facts for the jury to consider in determining this issue? No, Your Honor. The case that was presented at trial, that was presented by the plaintiff, was solely what Auckland's obligations were with respect to the borrower, what they should have done, which is a question of duty. But there are also facts, right? The facts were essentially undisputed as to when the fire occurred, when the claim was made, when the proceeds were received, whether the estate was going to pay off the loan. All those were undisputed facts. Whether they were paid over in a timely fashion, all those kinds. Aren't there some facts that the jury could consider that they could conclude one way or the other that would support determination? Your Honor, I agree that with respect to when the proceeds were received and when the proceeds were applied to the loan, that that is an issue of fact that the jury could decide. The problem here is that we don't know whether or not the jury decided on that issue or whether they decided on the Consumer Loan Act issue as being the basis for the unfair and deceptive trade practice claim, the Consumer Loan Act claim, because of the way the jury instructions were written. Do you want to save the rest of your time? Yes, Your Honor. Thank you very much. May it please the Court. My name is Bill Pearson, and I'm here on behalf of the plaintiff appellee, the estate of Verrill Brantner. Let me start with the questions that the Court has raised, and that is, first and foremost, whether or not the motion for summary judgment should even be an issue at this point in time. The motion for summary judgment was denied based on the trial court's determination that there were multiple issues of fact, genuine issues of material fact, on which the motion was denied. So the proposing counsel says there's no issue of material fact. That it's all legal issues as to whether the actions of AQUIN were unfair. I guess if there's a, what do you call it, a private CPA claim, non-statutory violation, or of any of the facts that would lead to the conclusion whether the CLA was violated. So what facts, in your view, were material to either of those decisions? Well, the material facts were, first and foremost, that it took two and a half years for an insurance claim to be settled when the testimony given to the jury was that it should have taken three months. So was that disputed, that it took two and a half years? It was undisputed that it took two and a half years. The question is whether timely and expeditiously processing this claim could have resulted in it being resolved in less time. And that seems to be a jury question. How long it should have taken, what the standard should have been seems to be a jury question. And what does that go to? What issue does that go to, legal issue? Well, the argument Aquin has made is that they had no legal duty to do any of this. The fact of them, and they rely on the deed of trust and the statutes that they've cited, what they've forgotten is the fundamental question is that what is at issue is an insurance policy. Well, but I think Judge Kuda's question is, if we agree with you that the timing question is a question for the jury, which issues does that address? In your opinion, that addresses all of the legal claims in this case? Yes. Well, how so? Because you raise specific violations of the CLA. Correct. And I'm not sure any of them had anything to do with timing. I'd have to go back and look. And then you have the standalone CPA claim, which unfair and deceptive practices, which opposing counsel says that's a legal issue for the court. So say the jury determined or considered whether Aquin took longer than was reasonable in assessing this claim or in applying the claim or settling the issue, which violation, which alleged violation of the CLA does that affect? Well, it affects, first of all, they were supposed to collect the payment, and upon collection of the payment notify the estate what it was for and how it was to be applied. So that turns on your argument that the payments have to be, that insurance proceeds constitute a payment under 3104291C. That's correct. And is there any support for that? They were specifically labeled as a payment on the loan. That was what they were paid out as. That's what the estate was notified. Under what document? That was, there is a specific exhibit notifying the estate, I believe it was in October of 2015. It's basically a receipt. I can't. Because the insurance policy was with, I think, QBE, QBE was the insurer, and they had a relationship just with the lender and then paid out on the insurance policy. Your Honor, I need to come back to that because that is probably the most important issue that I came here today to impress upon the court, and that is that this policy was a dual interest policy. In other words, there were two insurers under the policy. This is the – What's the ER set on that? 631. This is the certificate of insurance, and it specifically states the additional named insured is the estate. And what the jury heard in terms of expert testimony from the estate's expert, David Ford, is that because the estate was an additional insured under the policy, then they were entitled to be a beneficiary of everything the policy required. The policy required that an insurance claim be filed in an expeditious and timely fashion. The policy defined how the proceeds were to be handled and who was to be paid what. But we're sort of getting away from the question here because the jury had this instruction. I think the district court read the statutory requirement right to the jury, correct? And so the question is whether that violation requirement to timely make payments from borrower's escrow account was applicable here. And did the district court rule on that issue? It did not. It turned it over to the jury. Okay, so it let the jury make this legal determination as to whether 291C applied to the insurance, the payment of insurance proceeds. Well, that's not a question of law. That's a question of fact. Doesn't it require construction of that prong of the CLA? It states that if you collect a payment that you should, there are certain rules that you have to follow. Well, it says collect escrow amounts on a residential mortgage loan. Correct. And so the jury didn't get any instruction whether insurance proceeds are deemed to be the collection. The obtaining insurance proceeds is the collection of escrow amounts on a loan. Because to me, it sounds like something different. Is there a Washington case that would explain to me that collecting escrow amounts on a loan held for the borrower is the same as for payment of insurance taxes, et cetera, is the same as obtaining insurance proceeds after an insurable event occurs? Except you're assuming that the collection of a payment is solely limited to the payment of insurance proceeds. Well, I'm not assuming anything. I'm just asking where I would look to determine that a servicer that exercises the authority to collect escrow amounts on a residential mortgage loan held for the borrower for payment of insurance would cover the recovery of insurance proceeds paid after an insurable event occurred. Well, I believe that it would be a reasonable inference that when it says payment of insurance, that would include the payment of proceeds under the insurance policy. That's the whole reason why you have insurance. I mean, I would read this as when you make a payment on your mortgage, you pay an extra $200 and then the lender takes that and puts it into an escrow account and uses it to pay the insurance premium. Isn't that the normal interpretation of that language? That's one of the payments that would be involving insurance. Another payment that would involve insurance is proceeds under the policy. Okay, is there a case that you can point me to that provides that interpretation? I cannot. Okay, and so the court— I don't think one exists. Can I go on? Of course. So there were jury instructions given, and I think Judge Acuda is asking whether perhaps there might have been more detail. Did the parties participate in suggesting to the court what the jury instructions should be? Were there any objections made to the jury instructions given by the court? I think the point that we made in our submission is, A, we don't believe that that was accepted to, and B, if you look at defendant's proposed instruction regarding the CLA claim, it concedes that a payment for insurance would include payment of proceeds, and that is their proposed instruction can be found at ER 848. The point I think that Judge Nelson was driving at is that there were two questions that the jury was asked to decide. One is a per se violation of the CPA, and that's basically the per se aspect is defined by the Consumer Loan Act. Could I just get you back to looking at the defendant's proposed instructions? Sure. And it says that it must be established by the preponderance of the evidence that the estate of Brantner is a borrower and that Auquin failed to collect and make payments for insurance taxes and other charges from an escrow account. So it basically just tracks the language of the CLA provision. So where do they concur that obtaining insurance proceeds would fall under that prong? No. It's Auquin failed to collect and make payments for insurance taxes and other charges from an escrow account. It doesn't say anything about collecting insurance proceeds. Well, collect and make payments for insurance. The payment was to be made out of escrow. For insurance, not from the insurance company. There's nothing that says from the insurance company. Okay, so this is all that you're relying on. This just tracks the language of the statute as far as I can tell. That's correct, but there were actually, when you go back and look at what the per se instruction was, there were actually three prongs to it. There were three aspects of the Consumer Loan Act that could constitute a per se violation. What the court is focusing on is one of those three things. There are two others that would potentially be violations of the Consumer Loan Act that would justify in the estates. Let's say there was an error on the Consumer Loan Act. Do those errors carry over to the unfair? That seems to be, I mean, as I understand, Auquin is making two arguments. Number one, unfair and deceptive act or practice is a legal question that has to be decided, and the same legal errors that infect the CLA determination would infect that, regardless of the per se violation. And then secondly, it seems to be they're arguing, I almost got a concession that there is an open jury question about the timing of when to pay it, but this jury was infected by a lot of erroneous information that shouldn't have been before it. So how do you respond to both of those? Well, first of all, we don't believe that there was any error as a matter of law because we believe there were three potential violations of applicable statutes that the jury considered. Let's say we disagree with you on the violations of the CLA, and we don't think any of those were justified. The jury verdict let the jury say it was unfair as part of the stand-alone CPA claim, but didn't let the jury say that it was a public interest component separate between the CLA violations and the stand-alone CPA claim. So how does that affect our analysis? Do we have to say we don't know what the basis was of the jury's public interest finding? No, I think that the court could conclude from the record that there was more than ample evidence to sustain a verdict under the Hangman Ridge, under the first... So under the stand-alone CPA claim, you'd have to say this is the type of problem that could affect a great number of the public, and it seems like this was a pretty much of a one-off deal where Ockwin just, through negligence or oversight, didn't do what it was supposed to do on the insurance claim. Why would we say that any error was harmless and that there was overwhelming evidence of the public interest component? Well, first of all, there's no requirement that there has to be overwhelming evidence. There needs to be substantial evidence. Well, here, because we think that the jury could have found, if we think that the CLA violations are not appropriate or improper, the jury could have relied on the CLA errors. So that's why we have to look at harmless error and would have to be sufficient evidence, right, to say that they decided on the CPA claim stand-alone. And the question would be whether or not there was a capacity, based on all of the evidence, for someone in the similar shoes of the estate to be deceived. It's not that they were, that the intent is not a fundamental element of proof. It's the capacity to be deceived. I took you over your time. Thank you. Can I just, and I want just one minute, just want to be clear. There is a stand-alone CPA claim in terms of the verdict, and then there are three bases that you gave in support of a CLA per se violation. If we were to find that one of those CLA claims was defective or erroneous and had to set that aside or say that it was not properly rendered, would that affect the verdict? Do you agree that there has to be a remand? No. The other two would be, the other two potential CLA violations would be sufficient to sustain the verdict. Okay. Thank you. We have a minute for rebuttal. Thank you. I know you want to address some things, but can you just answer one question? Yes, John. The public interest impact, is Occoquan challenging that? Do they believe that the public interest impact prong was not satisfied? Your Honor, there was no evidence presented at the trial that would support a determination that the public interest was at all at risk in what Your Honor has characterized as a one-off. The typical cases that the Washington courts have considered when you're looking at public interest are where mass mailings were sent to individuals trying to collect information or money from them to receive a copy of a deed that they could have gotten from the Register of Deeds Office themselves, or they were debt collection notices that were sent to hundreds of thousands. So you're saying they would have had to come in and say this was kind of a pattern or practice for Occoquan to not be responsive or to delay payments or something like that? Your Honor, I cannot say that I have seen the phrase pattern or practice in the case law. In the cases where those situations have risen to satisfy the public harm element, there is not just a single instance of delayed payment. In this case, the district court erred when they denied summary judgment on the Consumer Loan Act claim and let the Consumer Protection Act claim go to the jury, where the jury then decided alone whether or not there was an unfair and deceptive act and the court should have made that decision as a matter of law. I see my time is about to expire, and I thank you very much. Okay, we thank both sides for their arguments. In the case of Furl Brantner v. Occoquan Loan Servicing is submitted and we'll next hear argument in Pierce County v. M.A. Mortenson Company.
judges: Ikuta, R. Nelson, Hunsaker